**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GOVERNMENT EMPLOYEES** | : | |
| **INSURANCE CO., et al.,** | : | |
| | : | |
| Plaintiffs, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| | : | **NO. 17-807** |
| **SCOTT P. NEALEY, et al.,** | : | |
| | : | |
| Defendants. | : | |

**M E M O R A N D U M**

STENGEL, J.                                                                            June 13, 2017

## I.   INTRODUCTION

This is a case about litigation abuse—namely, the misuse of lawsuits for the improper purpose of harassment, delay, and obstruction.

A few years ago, two class actions were filed against GEICO General Insurance Company in Washington state court. Not surprisingly, as in any litigation, a dispute arose about the use of documents in these Washington class actions. Rather than meet and confer with the plaintiffs' lawyers (or file a motion in Washington court) about this dispute, GEICO sued them here in Philadelphia.  That, however, was not enough to quench GEICO's thirst for aggression. GEICO also sued the plaintiffs' lawyers' expert witness and his company.

GEICO weaves some clever arguments in an attempt to justify its acts of obstruction. However, practicality, legal analysis, and common sense all make clear

GEICO is attempting to stalemate the Washington class actions by suing the plaintiffs' lawyers thousands of miles away from where those class actions are currently being litigated. The red herrings in this case are GEICO's alleged "claims" for trade secret misappropriation and unjust enrichment. Even if these "claims" were anything more than red herrings—which they are not—they fail as a matter of law.

The defendants filed a motion to dismiss. In the alternative, defendants move to transfer this action to the U.S. District Court for the Western District of Washington. While transfer might be appropriate in this case, there is no need. I will not tolerate the attempted manipulation of our judicial process in this case. The case is dismissed.

## II.    BACKGROUND

The facts giving rise to this case began two years ago when Stephen M. Hansen, a Washington lawyer, filed a putative class action against GEICO. Mr. Hansen filed the action, on behalf of Washington residents who are insured by GEICO, in Washington state court. The complaint alleged GEICO fails to fully reimburse its customers when they are involved in car accidents. More specifically, it alleges GEICO fails to honor its duty to provide Underinsured Motorist ("UIM") coverage for property damage to customers' cars.[1]

---

[1] Insurance companies, such as GEICO, provide UIM coverage to their customers to protect them in the event that customers get into accidents that are caused by the fault of another driver who is not insured—or whose insurance cannot fully cover the damages caused by the accident. In these scenarios, UIM coverage is particularly important. Because the "at fault" driver is uninsured or underinsured, the customers have no other way of obtaining reimbursement for the physical injuries or property damage they sustain.

After being sued in state court, GEICO attempted to remove the case to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA). Attorney Hansen, on behalf of the plaintiffs, then filed a motion to remand. The district court granted the motion to remand. McGraw v. GEICO Gen. Ins. Co., No. C15–5336, 2015 WL 5228027 (W.D. Wash. Sept. 8, 2015).

Back in state court, deadlines for briefing on the motion for class certification were set. Days before GEICO was ordered to file their brief, GEICO again attempted to remove the case to federal court. The plaintiffs again filed a motion to remand. The court granted the second motion to remand, finding that GEICO's removal was "improper." McGraw v. GEICO Gen. Ins. Co., Case No. C16–5876, 2017 WL 744594, at *4 (W.D. Wash. Feb. 27, 2017). This improper removal, the court found, had "increased [plaintiffs'] costs of litigation" and "wasted judicial resources." Id. GEICO filed a motion for reconsideration of this remand order, which the court denied on May 16, 2017.

Around the same time attorney Hansen filed suit in McGraw (the above case), he filed a separate class action, also against GEICO, in Washington state court. Scott P. Nealey, a California lawyer, also represents the plaintiffs in this case, which is captioned Stone v. Government Employees Insurance Company, Case No. C16–5383 (W.D. Wash.) (Settle, J.). The Stone complaint alleges GEICO systematically fails to properly reimburse its customers for the loss of use of their vehicle after car accidents.

On October 1, 2015, the Washington state court in Stone entered a stipulated Protective Order to protect confidential information anticipated to be produced through litigation. (Protective Order, Doc. No. 22-1 at 7–18) [hereinafter "the Protective Order"].

In order to subject material to the protections of the Protective Order, two conditions are required. First, the material must be "confidential" within the meaning of the Protective Order. (Protective Order ¶ 2.1). Second, the party seeking confidentiality must designate the material "Confidential or Highly Confidential pursuant to Section III" of the Protective Order. (Id.). In order to designate something as confidential, the Protective Order had very specific requirements:

> A party may designate Material or information as Confidential by placing or affixing on the Material in a manner that will not interfere with its legibility the words **"CONFIDENTIAL — SUBJECT TO A PROTECTIVE ORDER."**

> . . . A party may designate Material or information as Highly Confidential by placing or affixing on the Material in a manner that will not interfere with its legibility the words **"HIGHLY CONFIDENTIAL — SUBJECT TO A PROTECTIVE ORDER."**

(Id. ¶¶ 3.1.1 & 3.1.2) (emphasis in original).

As it did in McGraw, GEICO attempted to remove the Stone case to the U.S. District Court for the Western District of Washington under CAFA. On behalf of the Stone plaintiffs, attorneys Nealey and Hansen filed a motion to remand. The issue on remand was whether the amount in controversy was sufficient under CAFA to confer federal subject-matter jurisdiction.[2] In support of its response to the Stone plaintiffs' motion to remand, GEICO filed an affidavit prepared by David Antonacci, a technical supervisor in GEICO's claims department. The purpose of the affidavit was to try to prove to the court in Stone how many—of a certain type—of insurance claims GEICO receives and how much they, on average, pay out on this type of claim. GEICO used this

---

[2] CAFA's amount in controversy requirement is $5 million. 28 U.S.C. § 1332(d)(2).

aggregate amount to argue that CAFA's $5 million amount in controversy requirement was met.

GEICO filed the Antonacci affidavit on the <u>Stone</u> docket in two different ways. First, it filed a redacted version. This redacted version did not include any of the specific **"CONFIDENTIAL"** language required to bring it under the protections of the Protective Order. <u>See</u> <u>Stone v. Gov't Employees Ins. Co.</u>, Civ. No. 16–5383 (W.D. Wash.) (Doc. No. 24).

Second, GEICO tried to file a version of the Antonacci affidavit "under seal." (Compl. ¶¶ 45–46). It was stamped as being "Filed Under Seal." (<u>Id.</u> ¶¶ 2, 45–46). GEICO, however, did not file a motion to seal this document as is required by the U.S. District Court for the Western District of Washington's Local Rules of Civil Procedure. This version also did not include any **"CONFIDENTIAL"** language required to bring it under the protections of the Protective Order. (<u>Id.</u> ¶ 45–46).

Nowhere on any of the two versions of the filed Antonacci affidavit did GEICO place the language **"CONFIDENTIAL — SUBJECT TO A PROTECTIVE ORDER"** or **"HIGHLY CONFIDENTIAL—SUBJECT TO A PROTECTIVE ORDER."** (<u>Id.</u> ¶¶ 2–3, 6, 45–46, 64). In addition to filing the affidavit, GEICO provided attorneys Nealey and Hansen with an unredacted copy of the affidavit. This copy had the words "Filed Under Seal" on the upper left-hand corner of the first page of the affidavit. (<u>Id.</u> ¶ 46).

Two days after GEICO filed the Antonacci affidavit on the <u>Stone</u> docket, attorney Nealey was in Philadelphia for a deposition in a different case to which GEICO is not a

party.[3] The deponent was Dr. Bernard Siskin, an expert statistician who is employed by BLDS, a consulting firm with offices in Philadelphia. Dr. Siskin was retained as an expert for the plaintiffs in <u>Stone</u>. (<u>Id.</u> ¶ 53). The opposing party in the Siskin deposition was USAA—an automobile insurance company. (<u>Id.</u> ¶ 56).

GEICO alleges that, at this deposition, Mr. Nealey provided Dr. Siskin with a copy of the Antonacci affidavit to use to support his opinions. (<u>Id.</u> ¶ 58). The "Filed Under Seal" brand was not on the first page of the Antonacci affidavit used at Dr. Siskin's deposition. (<u>Id.</u>). GEICO alleges that "[u]pon information and belief, either the Attorney Defendants [Nealey and Hansen] or Defendant Siskin, or both, tampered with the copy of Mr. Antonacci's Declaration that GEICO disclosed in the *Stone* Lawsuit by (i) removing the 'Filed Under Seal' brand from the first page; or (ii) substituting the first page of the redacted version for the first page of the unredacted and sealed version." (<u>Id.</u> ¶ 59). Mr. Hansen was not present at Siskin's deposition. (<u>Id.</u> ¶ 62).

After this deposition, the district court in <u>Stone</u> ordered GEICO to show cause why the Antonacci affidavit should be under seal. In that order, the district court noted that GEICO had not properly followed the Local Rules for filing the affidavit under seal. It also noted that the Protective Order did not confer judicial decision-making authority on GEICO; GEICO was still required to follow the Local Rules for filing a document under seal even though there was a state-court protective order. After argument, that court ultimately granted GEICO's motion to seal. However, this was not until months after Dr. Siskin was deposed.

---

[3] The case, however, did involve similar claims as were asserted in <u>McGraw</u> and <u>Stone</u>.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45–46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir.1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Thus, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Id.</u> at 678–79.

Because this is a motion to dismiss for failure to state a claim, I will "accept all [plaintiff's] factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." <u>Bruni v. City of Pittsburgh</u>, 824 F.3d 353, 360 (3d Cir. 2016). However, my acceptance of all allegations as true does not apply to "legal conclusions." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

All defendants move to dismiss GEICO's complaint pursuant to Rule 12(b)(6) for failure to state a claim. In the alternative, they move to transfer this case, pursuant to 28 U.S.C. § 1404, to the U.S. District Court for the Western District of Washington. Defendants Nealey and Hansen move to dismiss the complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

As explained below, all claims against Hansen must be dismissed for lack of personal jurisdiction. The DTSA claim, against all defendants, fails as a matter of law because GEICO did not take reasonable measures to protect the secrecy of its alleged

trade secrets. Even if the DTSA claim were plausible, though, it must be dismissed because I lack subject-matter jurisdiction to consider it. The unjust enrichment claim also fails to state a claim.

Separate and apart from the above reasons, I will dismiss GEICO's complaint in its entirety as a sanction, pursuant to my inherent authority, for misuse of the judicial process and litigation abuse.[4]

### A.     *Personal Jurisdiction*

Defendants Hansen and Nealey argue that this Court lacks personal jurisdiction over them.

Where, as here, there is a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists. Marten v. Godwin, 499 F.3d 290, 295–96 (3d Cir. 2007). At this stage, without an evidentiary hearing, the plaintiff need only establish "a prima facie case of personal jurisdiction" and is entitled to all factual disputes being drawn in its favor and its allegations taken as true. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Nevertheless, the plaintiff must allege "specific facts"—not vague or conclusory assertions. Marten, 499 F.3d at 298.

Rule 4(k) of the Federal Rules of Civil Procedure allows district courts to assert personal jurisdiction, in certain circumstances, over a defendant who does not reside in that district. Rule 4(k) states, in relevant part, that serving a summons "establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of

---

[4] As the defendants moved to transfer in the alternative, and I am dismissing the complaint in its entirety, I will deny their motion to transfer as moot.

general jurisdiction in the state where the district court is located . . . or [] when authorized by federal statute." Fed. R. Civ. P. 4(k)(1)(A), (C). In other words, Rule 4(k) allows district courts to assert personal jurisdiction over non-resident defendants to the extent permitted by the law of the state in which the district court sits. Id.; Marten, 499 F.3d at 296 (citing Provident Nat'l Bank v. Federal Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)). Applying the law of this state, we must look to Pennsylvania's long-arm statute which provides for jurisdiction coextensive with that allowed by the Due Process Clause of the United States Constitution. 42 Pa. C.S. § 5322(b).

Under the Due Process Clause, I may exercise personal jurisdiction only over a defendant who has "certain minimum contacts" with the forum state (*i.e.* Pennsylvania) "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). I must also consider, relatedly, whether the defendants' contacts with Pennsylvania are such that they "should reasonably anticipate being haled into court" here. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

There are two different categories of personal jurisdiction. The first category, general jurisdiction, "exists when a defendant has maintained systematic and continuous contacts with the forum state." Marten, 499 F.3d at 296 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 & n.8 (1984)). These contacts must be so continuous and systematic so as to render the defendant "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919

(2011). GEICO does not argue that I may exercise general personal jurisdiction over Nealey or Hansen. Thus, this category of personal jurisdiction is not at issue in this case.

The second category, specific jurisdiction, has three requirements. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed [its] activities" at the forum state. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). In other words, the defendant must take some sort of "action" that is "*purposefully directed toward the forum State*." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 112 (1987) (emphasis in original) (citing Burger King, 471 U.S. at 476)). Second, the litigation must "arise out of or relate to" at least one of these activities. Id. (quoting Helicopteros, 466 U.S. at 414). Third, if these prior two requirements are met, I may consider whether the exercise of jurisdiction "comport[s] with 'fair play and substantial justice.'" Id. (quoting Burger King, 471 U.S. at 476). In assessing specific personal jurisdiction, the U.S. Supreme Court has held that "[e]ach defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984); Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction").[5]

In addition to this three-part test for specific jurisdiction, the Supreme Court has set forth a special test to determine whether there is specific personal jurisdiction with

---

[5] In one unique case, the Third Circuit found that it could aggregate the activities of two defendants in analyzing whether there was specific personal jurisdiction. Miller Yacht, 384 F.3d at 95 n.1. It did so after inferring a partnership between the two defendants and thus it attributed the contacts of one defendant to the other defendant. Id. As explained in greater detail below, Miller Yacht is inapposite to this case.

respect to intentional tort claims. <u>Calder</u>, 465 U.S. 783. This analysis is referred to as the <u>Calder</u> "effects" test. Under the "effects" test, personal jurisdiction is established if: (1) the defendant committed an intentional tort, (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort, and (3) the defendant "expressly aimed" its tortious conduct at the forum state such that the forum can be said to be the "focal point" of the tortious activity. <u>Marten</u>, 499 F.3d at 297 (<u>quoting</u> <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 265–66 (3d Cir. 1998)). The <u>Calder</u> "effects" test need only be considered if the court finds that a defendant lacks sufficient minimum contacts under the traditional test. <u>IMO Indus.</u>, 155 F.3d at 259–60; <u>Vizant Tech., LLC v. Whitchurch</u>, 97 F. Supp. 3d 618, 629 (E.D. Pa. 2015).

## 1. <u>Traditional Test for Specific Personal Jurisdiction</u>

Applying the traditional three-part test for specific jurisdiction, I find that I may exercise specific personal jurisdiction over defendant Nealey, but not defendant Hansen.

### *a.* *Nealey*

This Court may exercise specific personal jurisdiction over defendant Nealey.

First, it is unquestionable that defendant Nealey purposefully directed his activities at the forum state here: Pennsylvania. Nealey traveled to Pennsylvania to participate in a deposition with an expert witness who is a Pennsylvania resident. While in Pennsylvania, Nealey participated in the deposition, turned over documents to USAA, and provided the affidavit to Dr. Siskin. These activities certainly "arise out of or relate" to this litigation as GEICO's entire case centers around what happened at this deposition in Pennsylvania.

These facts also form the basis for the alleged wrong (or tort) in this case: the misappropriation. See Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 147 (3d Cir. 1992) (a defendant is subject to personal jurisdiction in a state that he travels to and commits the alleged wrong in). Lastly, there is nothing to show that subjecting Nealey to personal jurisdiction here does not comport with notions of fair play and substantial justice. By travelling to Pennsylvania, and participating as an attorney in a deposition there, Nealey reasonably could be expected to be haled into court in Pennsylvania.

Based on all the foregoing, I conclude that exercising specific personal jurisdiction over Nealey comports with due process considerations.

### b.    *Hansen*

Under the traditional test, this Court does not have specific personal jurisdiction over defendant Hansen.

Hansen never "purposely directed" his activities at the Commonwealth of Pennsylvania. O'Connor, 496 F.3d at 317. GEICO's complaint does not allege Hansen has ever travelled to Pennsylvania. It is undisputed that Hansen was not present at Dr. Siskin's deposition. GEICO's complaint also does not allege Hansen ever sent any emails, letters, faxes, or other communication into Pennsylvania. Hansen's sole connection to this case is that he is co-counsel with defendant Nealey in the Stone action in Washington. Hansen has vouched for Nealey in Nealey's prior applications for *pro hac vice* admission, but all these application were made in Washington—not Pennsylvania— courts. Whatever tort Hansen may have committed could not have been done by him in Pennsylvania.

GEICO points to a number of communications Hansen has had with Nealey, yet none of them "arise out of" or are "related to" this litigation so as to establish personal jurisdiction over Hansen. Id. For example, Hansen and Nealey have litigated cases together (in Washington), Nealey's website lists Hansen as "national affiliated counsel," and Hansen has previously retained Dr. Siskin as an expert in other unrelated Washington cases. These facts generally show that Nealey and Hansen litigate cases together, and that Hansen has hired Siskin as an expert. Yet they do not relate to or arise out of this litigation. Nor do these facts show that Hansen ever purposely directed any of his activities at Pennsylvania.

GEICO attempts to analogize this case to Miller Yacht. There, the Third Circuit found a partnership relationship sufficient to impute the contacts of one defendant to the other for purposes of finding specific personal jurisdiction. However, Miller Yacht differs in significant respects to this case. In Miller Yacht, the plaintiff (a yacht company) sued the defendants (two boat salesmen) for trademark infringement, unfair competition, and tortious interference. 384 F.3d at 94–95. These two non-resident defendants challenged personal jurisdiction in the U.S. District Court for the District of New Jersey. 384 F.3d at 95. On appeal, the Third Circuit found a limited exception to the general rule that specific personal jurisdiction must be assessed as to each defendant. Id. at 95 n.1. It reached this conclusion after finding that the non-resident defendants had travelled to New Jersey together, marketed in New Jersey together, negotiated in New Jersey together, and transmitted facsimiles to the plaintiff in New Jersey. Id. at 95 & n.1. None of these circumstances are present here.

GEICO argues Nealey and Hansen were acting as partners and as such, under Miller Yacht, all of Nealey's contacts with Pennsylvania can be imputed on to Hansen for purposes of finding specific jurisdiction over Hansen. The problem with this argument is that, unlike the defendants in Miller Yacht, Hansen and Nealey never travelled together to the forum state (Pennsylvania), worked together in the forum state, negotiated together in the forum state, or took any actions together in the forum state. Cf. id. at 97 ("[Plaintiff] alleges that [defendants] made trips to New Jersey as part of their negotiations"). Only Nealey ever did *anything* in—or related to—Pennsylvania. This is markedly different than the defendants in Miller Yacht who (i) "acted together during relevant negotiations" in the forum state, (ii) solicited customers together in the forum state, and (iii) introduced each other as "partner[s]" while in the forum state together. Id. at 95 n.1.

Contrary to GEICO's arguments, Miller Yacht does not create an exception to the general rule—that specific jurisdiction is assessed as to each defendant—any time two defendants generally acted together. The non-resident defendants in Miller Yacht not only acted together but, more importantly, they did so while in the forum state together. Thus, GEICO's comparison of Miller Yacht to this case is attenuated at best.[6] GEICO is unable to point to any allegation in its complaint, or other evidence, showing that Hansen

---

[6] GEICO's citation to Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539 (3d Cir. 1985) suffers from the same problem. There, the Third Circuit found that "[h]aving traveled to Pennsylvania to return decedent's body, appellees clearly availed themselves of the 'privilege of acting within' Pennsylvania." Gehling, 773 F.2d at 544. This analogy does not work because Hansen never travelled to Pennsylvania with Nealey. Indeed, Hansen never travelled to Pennsylvania at all.

ever took any actions—with or without Nealey—in Pennsylvania or directed at Pennsylvania.[7] Any arguable contacts Hansen may have had with Pennsylvania are extremely thin and attenuated. Thus, haling Hansen into court in Pennsylvania, based on these contacts, would offend traditional notions of fair play and substantial justice.

For all these reasons, this Court lacks specific personal jurisdiction over defendant Hansen under the traditional test.

### 2.    The *Calder* "Effects" Test

Now I must consider whether exercising personal jurisdiction over defendant Hansen would be proper under the Calder "effects" test.[8] I conclude it would not.

GEICO is unable to establish any of the three essential elements of the Calder "effects" test. First, GEICO cannot even establish that Hansen committed an intentiaonl tort. Their only argument is that Nealey's intentional tort should be imputed onto Hansen. GEICO does not allege Hansen took any affirmative steps or actions. As he was not present at the deposition in Pennsylvania, it cannot be said he disclosed the affidavit to Dr. Siskin or USAA's counsel.

---

[7] GEICO alleges that, as counsel in Turk, Hansen "knew or should have known" that Siskin would be deposed in Philadelphia and the affidavit would be used at this deposition. (Compl. ¶ 62). The test for personal jurisdiction, however, is not whether a non-resident "knew or should have known" that something would occur in the forum state. Rather, the test looks at what the non-resident actually *did* in the forum state or directed at the forum state. Asahi, 480 U.S. at 112; O'Connor, 496 F.3d at 317.

[8] I need not consider this issue with respect to defendant Nealey because I have already found personal jurisdiction exists over him under the traditional three-part test. IMO Indus., 155 F.3d at 259–60; Whitchurch, 97 F. Supp. 3d at 629.

Second, there is nothing before me showing that GEICO felt the brunt of the harm of Hansen's alleged acts in Pennsylvania. GEICO is neither headquartered nor incorporated in Pennsylvania. The eight GEICO-affiliated plaintiffs are headquartered in Maryland and Nebraska. (Compl. ¶¶ 8–14); cf. Vizant, 97 F. Supp. 3d at 632 (finding that because the plaintiff was headquartered in Pennsylvania, it necessarily "felt the brunt of the harm" there in a trade-secret misappropriation claim). It is well-established that any trade secrets possessed by an owner are possessed where the trade-secret owner is a resident. Paolino v. Channel Home Ctrs., 668 F.2d 721 (3d Cir. 1981). This rule of law has led courts to find the "brunt of the harm," under Calder, to occur in the states where the trade-secret owner is incorporated or headquartered. Cabot Corp. v. Niotan, Inc., 08–CV–1691, 2011 WL 4625269, at *14 (E.D. Pa. Sept. 30, 2011).[9] Thus, in Cabot Corp., a trade secret misappropriation case, the court found the "brunt of the harm" to have occurred in Delaware and Massachusetts—the two states where the plaintiff-corporation resided. Id. Accordingly, the brunt of any harm to GEICO would be felt in Maryland or Nebraska.

Third, GEICO has failed to establish that Hansen "expressly aimed" any tortious conduct at Pennsylvania. To meet this element, a plaintiff "must do more than simply show that defendant knew that plaintiff was located in a particular forum." Id. The "expressly aimed" requirement means that the defendant must have "manifest[ed] behavior intentionally targeted at and focused on" the forum. IMO Indus., 155 F.3d at

_____

[9] A corporation is deemed to be a resident of any state in which it is incorporated and the state where it is headquartered. 28 U.S.C. § 1332(c)(1); Cabot Corp., 2011 WL 4625269, at *14.

265. Here, there is no such evidence or allegation. All Hansen allegedly did was team up with Nealey to litigate the Turk and Stone lawsuits in Washington. Hansen never went to Pennsylvania, telephoned Pennsylvania, advertised in Pennsylvania, or performed legal services in Pennsylvania. At best, Hansen was tangentially associated with Nealey. This falls far short of having "expressly aimed" tortious conduct at the Commonwealth of Pennsylvania.

Based on all of the above, this Court lacks personal jurisdiction over Hansen under both the "traditional" test and the Calder "effects" test for specific personal jurisdiction. Accordingly, all claims against Hansen must be dismissed.[10]

### B. Reasonable Steps to Protect a Trade Secret

GEICO's DTSA claim against the remaining defendants must be dismissed because it fails to state a claim for relief.

In order to qualify for protection as a "trade secret" under the DTSA, the owner of the alleged trade secret must have "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A). Because the DTSA was enacted so recently, there is little case law dictating how courts should analyze whether "reasonable measures" have been pled.

---

[10] This goes for both the DTSA claim and the unjust enrichment claim. The conduct and allegations (of Nealey and Hansen) that support both claims are identical. Thus, not surprisingly, GEICO's briefing as to personal jurisdiction over Hansen does not differentiate between the DTSA claim and the unjust enrichment claim. (Doc. No. 28 at 7–14). Nevertheless, I note that GEICO's case for personal jurisdiction over the unjust enrichment claim is even weaker. GEICO conferred upon Hansen and Nealey the benefit of the affidavit (presumably by mailing or emailing it to them in *Washington*, not Pennsylvania). GEICO alleges Hansen has appreciated this benefit in the Turk case: a *Washington* case. Any economic benefit Hansen might gain would be appreciated via a judgment entered in *Washington*—not Pennsylvania—court.

Plaintiffs cite to a string of cases standing for the proposition that whether "reasonable measures" have been taken to protect the secrecy of a trade secret is a question of fact that cannot be determined at the pleadings stage. (Doc. No. 28 at 20–21). Plaintiffs mistake the forest for the trees. While it may be true that courts often do not resolve this issue at the pleadings stage, this does not mean it is improper to do so in certain circumstances—or that it is never done. See Raben Tire Co. v. McFarland, 5:16–CV–141, 2017 WL 741569, at *2 (W.D. Ky. Feb. 24, 2017) (granting Rule 12(b)(6) motion to dismiss DTSA claim because the complaint failed to sufficiently allege reasonable measures); M.C. Dean, 199 F. Supp. 3d at 1354–55 (same); Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co., 1 F. Supp. 3d 224, 267 (S.D.N.Y. 2014) (dismissing trade secret claim at pleadings stage after explaining that sometimes the existence of a trade secret "may be evident from the pleadings").

GEICO relies heavily on Alpha Pro Tech, Inc. v. VWR International LLC, 984 F. Supp. 2d 425 (E.D. Pa. 2013). In Alpha Pro, the district court analyzed whether reasonable measures had been taken under the Pennsylvania Uniform Trade Secrets Act (PUTSA). 984 F. Supp. 2d at 434–35. The district court concluded it could not, in that particular case, determine whether "reasonable measures" had been taken because it "did not have the necessary factual array before it to determine whether" the plaintiff's allegations were true. Id. at 437.

GEICO's reliance on Alpha Pro is unavailing in this case. The case at bar is much different than Alpha Pro because the dispute here revolves around matters that are

entirely available via public record.[11] This case concerns information in an affidavit, public filings by the parties in the Western District of Washington, and the terms of a protective order. All of this information is readily available, in "black-and-white," so to speak. In sum, the "factual array" in Alpha Pro was disputed and unclear. Here, by contrast, the steps GEICO took to protect the secrecy of its alleged trade secrets are explicitly memorialized as matters of public record.[12]

Up to a certain point, it is true that GEICO took reasonable measures to protect the secrecy of its alleged trade secrets: claims data gathered about its customers. For example, GEICO restricted access to claims data to certain employees. In addition, the claims data is generally stored in secure facilities and GEICO employees are instructed to

---

[11] It is also different because this is a DTSA case. The Alpha Pro court's finding, that it could not decide this issue at the pleadings stage, was based purely on state law grounds. See Alpha Pro, 984 F. Supp. 2d at 435–36 ("[W]hether information rises to the level of a trade secret under PUTSA is a question of fact not appropriate for resolution on a motion to dismiss." (citing cases)).

[12] Although this is a motion to dismiss, I may still consider the protective order, court dockets, documents, and filings. E.g., Sarpolis v. Tereshko, 26 F. Supp. 3d 407, 414 n.4 (E.D. Pa. 2014). "In deciding motions under Rule 12(b)(6), courts may consider documents *integral to or explicitly relied* upon in the complaint . . . or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." In re Asbestos Prods. Liability Litig. (No. VI), 822 F.3d 125, 133 n.7 (3d Cir. 2016) (emphasis in original) (internal citations omitted). The protective order is integral to and explicitly relied upon by GEICO in its complaint. (Compl. ¶¶ 42–44, 47, 55, 64). Court dockets may be considered on a motion to dismiss because they are matters of public record. Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("[C]ourts generally consider only the allegations in the complaint, exhibits attached to the complaint, *matters of public record*, and documents that form the basis of a claim" in deciding motions to dismiss under Rule 12(b)(6)) (emphasis added). GEICO explicitly references the Washington lawsuits and their public dockets in its complaint; these dockets are undoubtedly integral to GEICO's complaint. (Compl. ¶¶ 25–31, 42, 45–48, 50–59). Indeed, GEICO's case depends almost entirely upon the filings made and activity on the docket in the U.S. District Court for the Western District of Washington. These filings and dockets are matters of public record.

immediately report any loss, theft, or misuse of GEICO documents. (Compl. ¶¶ 36–41). These facts, however, are rendered moot in light of GEICO's acts and omissions with respect to the specific facts of this case.

A close look at the specific facts of this case reveal GEICO did not take reasonable measures to protect the secrecy of its alleged trade secrets. Absent from GEICO's complaint and briefing is the fact that *GEICO*—not defendants—placed its alleged trade secrets in issue when it decided to attempt to remove the <u>Stone</u> case from Washington state court to federal court. Making this choice, GEICO knew that it was required to prove to the Washington federal court that the amount in controversy of all the <u>Stone</u> plaintiffs' auto-insurance claims exceeded $5 million. In setting out to meet this burden, GEICO used much of the same information it now claims is a trade secret to support its notice of removal; GEICO used its claims data, numbers, and values to argue that CAFA's $5 million jurisdictional amount in controversy had been met. It did so in a notice of removal that was publicly filed—not filed under seal.[13]

More importantly, long before the <u>Stone</u> case had been removed to federal court, GEICO had entered into the stipulated Protective Order with attorneys Hansen and Nealey. (Doc. No. 22-1 at 7–18). The entire purpose of this Protective Order is to prevent the disclosure of material that the producing party wishes to keep confidential. To that end, the <u>Stone</u> Protective Order—as with any protective order—contains very specific requirements to designate documents "confidential." Two things are clear, even when

---

[13] <u>See</u> Notice of Removal at ¶¶ 6, 12, <u>Stone v. GEICO</u>, No. 16-5383 (W.D. Wash. May 20, 2016) (Doc. No. 2-1).

reading the complaint in a light most favorable to GEICO: (1) GEICO provided the
Antonacci affidavit to attorneys Nealey and Hansen ; and (2) GEICO blatantly failed to
follow the requirements of the protective order by branding this affidavit
"**CONFIDENTIAL**" or "**HIGHLY CONFIDENTIAL**." (Doc. No. 22-1 at 9 ¶¶ 3.1.1 &
3.1.2).

At the time GEICO turned over Antonacci's affidavit to attorneys Hansen and
Nealey, the above Protective Order had been on the books for years. All GEICO had to
do was follow the Protective Order's terms to designate the Antonacci affidavit as
"confidential." GEICO never did this. GEICO's failure to follow the terms of the
Protective Order in any way at all cannot be construed as anything other than a clear
signal to Nealey and Hansen that GEICO did not intend for the Antonacci affidavit to be
confidential.[14] Under these circumstances, the measures that would have been
"reasonable" to take would be to designate the affidavit as "confidential" per the
Protective Order.

---

[14] GEICO attempts to avoid the import of the Protective Order by making the conclusory
allegation that "[a]s a document that contained confidential trade secrets, Mr. Antonacci's
Declaration fell within the terms of the protective order." (Compl. ¶ 44). This is a legal
conclusion and, as such, I am not required to accept its truth. Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009). And, to be sure, it is far from true. Even if Antonacci's affidavit did contain trade
secrets, that alone is not enough to save it from disclosure under the Protective Order. The
Protective Order is clear that, in order to gain protection, the disclosing party must place the
specific term "**CONFIDENTIAL – SUBJECT TO A PROTECTIVE ORDER**" on the
document to be disclosed. (Doc. No. 22-1 at 9 ¶ 3.1.1. In other words, a document does not
magically fall under the protection of the Protective Order by osmosis. It must be so designated
by the disclosing party in the above manner. That was never done here. See generally Compl.;
Protective Order.

GEICO tries to save its failure to follow the Protective Order by alleging that it filed a "sealed" version of the affidavit on the Stone docket. As with GEICO's conclusory allegation that the Antonacci affidavit falls under the Protective Order, this allegation also misses the mark. The Local Rules of Civil Procedure for the U.S. District Court for the Western District of Washington set forth specific procedures for filing a document under seal. Specifically, the Local Rules state:

> A party may file a document under seal in *only two circumstances*:
>
> > (A) if a statute, rule, or prior court order expressly authorizes the party to file the document under seal; or
> >
> > (B) if the party files a motion to seal the document before or at the same time the party files the sealed document. Filing a motion or stipulated motion to seal permits the party to file the document under seal without prior court approval pending the court's ruling on the motion to seal. The document will be kept under seal until the court determines whether it should remain sealed.

Local Rules W.D. Wash. LCR 5(g)(2) (emphasis added).

GEICO failed to follow this Local Rule when it filed the Antonacci affidavit. First, there was no "statute, rule, or prior court order expressly authorize[ing]" GEICO to file the Antonacci affidavit under seal. Id. 5(g)(2)(A).[15] Second, GEICO did not file a motion

---

[15] GEICO misconstrues this subparagraph of W.D. Wash. Local Rule 5(g)(2). According to GEICO, the Stone Protective Order qualified as a "prior court order" that "expressly authorize[d]" GEICO to file the Antonacci affidavit "under seal" without a motion to seal. The plain language of Local Rule 5 shows GEICO is wrong. The protective order in Stone, while always binding on the *parties*, had no legal effect in the *federal court* in Washington. Not a single provision of the Protective Order authorized the parties to file documents under seal in Washington federal court. Indeed, Judge Settle went out of his way to emphasize this: "Although the parties agreed to a protective order that was signed by the state court judge, that protective order does not confer judicial decision-making on the parties for each document filed." See Order to Show Cause, Stone v. GEICO, No. 16-5383 (W.D. Wash. July 28, 2016) (Doc. No. 34).

to seal before or at the same time that it filed the Antonacci affidavit on the docket. Judge Settle confirmed this when he ordered GEICO to show cause as to why the Antonacci affidavit should be under seal. Judge Settle recognized that GEICO had filed "various documents," including the Antonacci affidavit, "under seal, but [had] not filed any motions to seal to these documents."[16]

The above public records clearly demonstrate GEICO did not take "reasonable" measures to keep its alleged trade secrets confidential. GEICO made three omissions—or missteps—that support this finding. First, GEICO explicitly relied on much of the information it now alleges is a "trade secret" in its *publicly* filed notice of removal. Second, it is undisputable, even at this stage, that GEICO did not follow the Protective Order's rules for designating the Antonacci affidavit "confidential" and thus protected from disclosure. Third, GEICO did not properly follow the Western District of Washington's Local Rules for filing the Antonacci affidavit under seal. There was no

---

Much of GEICO's confusion regarding the Protective Order centers around the difference between the Protective Order's effect on the parties versus its effect on the U.S. District Court for the Western District of Washington. The Protective Order was binding on the parties because they entered into it jointly, signed it, and agreed to be bound by it. Therefore, if the parties—for example—designated something as "confidential" per the terms of the protective order, this would preclude the receiving party from disclosing it to any third-party regardless of whether it was subsequently filed under seal in any court. The point GEICO misses, however, is that even if a document was designated "confidential" under the Protective Order, GEICO would still need to follow the Local Rules in the Western District of Washington by filing a motion to seal along with the confidential document if GEICO wished to keep the document under seal in that court. While illustrative of GEICO's conflation, as a practical matter this point is moot because GEICO never even designated the Antonacci affidavit as "confidential" per the terms of the Protective Order.

[16] See Order to Show Cause, <u>Stone v. GEICO</u>, No. 16-5383 (W.D. Wash. July 28, 2016) (Doc. No. 34).

prior statute, rule, or court order allowing GEICO to file the Antonacci affidavit under seal without filing a motion to seal along with this affidavit.

Despite all these failings, GEICO somehow tries to argue it took "reasonable measures" to protect the information contained within the Antonacci affidavit. This simply is not the case. Had GEICO wished to keep its alleged trade secrets confidential, it had a number of reasonable measures at its disposal. It could have: (1) followed the terms of the Protective Order to designate the affidavit "confidential"; (2) properly followed the Western District of Washington's Local Rules for filing the affidavit under seal; (3) not included information from the affidavit in its publicly filed notice of removal; and/or (4) entered into some sort of private agreement with attorneys Nealey and Hansen to limit their use of the affidavit. GEICO did not do a single one of these things.[17]

On top of all this, GEICO waited eight months after Dr. Siskin's deposition to file this lawsuit. This fact runs directly counter to the sense of panic and urgency underlying GEICO's entire complaint and briefing. In these eight months between the disclosure and the filing of this lawsuit, GEICO does not allege it ever demanded return of the Antonacci affidavit. GEICO also does not allege it ever attempted to confer with Nealey or Hansen regarding the affidavit. These facts further evidence GEICO's failure to take reasonable measures to protect the secrecy of its alleged trade secrets. If the information

---

[17] Putting aside the protection the protective order, filing under seal, or entering a private non-disclosure agreement would have provided GEICO, GEICO is unable to articulate—and does not allege in its complaint—any other basis for its argument that it took reasonable measures or that attorneys Nealey and Hansen were under some duty regarding the affidavit.

in the affidavit was so confidential, presumably GEICO would have taken more immediate steps to prevent the affidavit's exposure to third parties.[18]

To be sure, just because GEICO generally protects its claims data and computer operating system in day-to-day affairs does not mean GEICO took "reasonable measures" in this case. As explained by the U.S. Supreme Court, once "an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." Ruckelhaus v. Monsanto Co., 467 U.S. 986, 1002 (1984). That is exactly what happened in this case. When GEICO disclosed the Antonacci affidavit to attorneys Nealey and Hansen, the attorneys were "under no obligation to protect the confidentiality" of the Antonacci affidavit because (1) GEICO did not properly designate it as confidential as per the Protective Order, (2) GEICO did not properly follow the Local Rules for filing a document under seal in the Western District of Washington, and (3) GEICO did not enter into any private non-disclosure agreement with attorneys Nealey and Hansen. In addition, GEICO had "otherwise publicly disclosed" its alleged trade secrets when it relied on them in a public filing to support its notice of removal.

As mentioned, GEICO does not allege it took any other steps—such as a private agreement—to limit Nealey or Hansen's use of the Antonacci affidavit. Id.; Sheets v. Yamaha Motors Corp., 849 F.2d 179, (5th Cir. 1988) ("A disclosure of a trade secret to others who have no obligation of confidentiality extinguishes the property right in the

---

[18] This marked delay also evidences, discussed infra, GEICO's true (and improper) motive for filing this lawsuit.

trade secret."); <u>BDT Prods., Inc. v. Lexmark Internat'l, Inc.</u>, 274 F. Supp. 2d 880, 893

(W.D. Ky. 2003) (finding there is no "implied duty" to keep information confidential); <u>id.</u>

at 891 ("A failure to require a third party to enter a confidentiality agreement to protect

alleged trade secrets is one clear way to waive any trade secret protection that might

exist"). This is much different than DTSA cases where courts have found reasonable

measures taken when, for example, the disclosing party required the receiving party to

enter into a confidentiality agreement. <u>Syntel Sterling Best Shores Mauritius Ltd. v.</u>

<u>Trizetto Grp.</u>, 15–CV–211, 2016 WL 5338550, at *1, 6 (S.D.N.Y. Sept. 23, 2016). In

<u>Syntel Sterling Best Shores Mauritius Limited v. Trizetto Group</u>, the district court found

the plaintiff's complaint plausibly alleged it took reasonable measures because the

plaintiff made the defendant sign a confidentiality agreement preventing disclosure of the

alleged trade secret. 2016 WL 5338550, at *6. The parties had entered into a contract that

"prohibit[ed] each party from using the other's 'Confidential Information' for its own

benefit." <u>Syntel Sterling</u>, 2016 WL 5338550, at *1. This contractual provision, the court

found, sufficiently supported an allegation of reasonable measures. <u>Id.</u> at *6. Unlike in

<u>Syntel Sterling</u>, GEICO never made attorneys Nealey or Hansen enter into such an

agreement. Of course, GEICO had the benefit of the Protective Order, but for whatever

reason, chose not to follow it.

Other than GEICO's own wishes—which carry no force under the law—there was

no agreement, court order, or other mechanism limiting the defendants' use of the

Antonacci affidavit once it was disclosed. The Washington federal court's Local Rules

for filing under seal were not followed by GEICO. The Protective Order was not

followed by GEICO. Nor did GEICO enter into a private agreement with Nealey or Hansen to restrict or limit the use of the affidavit. Thus, it cannot be said that these circumstances gave "rise to a duty to maintain the secrecy" of the Antonacci affidavit. 18 U.S.C. § 1839(5)(B)(ii)(II)–(III).[19]

For all the foregoing reasons, I find that GEICO has failed to state a claim for relief under the DTSA.

## C.      *Subject-Matter Jurisdiction*

GEICO's DTSA claim must be dismissed, even assuming *arguendo*, it sufficiently alleged reasonable measures. The complaint fails to establish federal subject-matter jurisdiction as to GEICO's DTSA claim.

The person asserting jurisdiction—the plaintiff—bears the burden of establishing subject-matter jurisdiction. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993). Because subject-matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). A federal court has an independent obligation—even if not raised by the parties—to *sua sponte* determine whether it has subject-matter jurisdiction in any given case. Id. If a court concludes that it lacks subject-matter jurisdiction, it must dismiss the complaint in its entirety. Id. At the

---

[19] Even accepting GEICO's allegation as true—that it wrote "Filed Under Seal" on the affidavit it gave to defendants—this does not actually confer the legal benefit of being filed under seal. GEICO still had to actually follow the Local Rules for filing the affidavit under seal, which, as discussed (and as pointed out by the presiding district judge in an order to show cause), see supra note 16, GEICO never did.

pleadings stage of litigation, "[t]he issue of whether there is subject-matter jurisdiction raises the question whether the complaint, on its face, asserts a non-frivolous claim 'arising under' federal law." <u>Gulf Oil Corp. v. Copp Paving Co.</u>, 419 U.S. 186, 212 n.9 (1974).

Congress has declared that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As for the DTSA specifically, Congress vested federal courts with original jurisdiction to decide civil cases involving misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). This "interstate commerce" requirement is jurisdictional. <u>United States v. Agrawal</u>, 726 F.3d 235, 244–45 (2d Cir. 2013); <u>M.C. Dean, Inc v. City of Miami</u>, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016); <u>Donatello v. County of Niagara</u>, 15–CV–39V, 2016 WL 3090552, at *5 (W.D.N.Y. June 2, 2016); <u>EmployBridge, LLC v. Riven Rock Staffing, LLC</u>, Civ. No. 16–833, 2016 WL 7438044, at *2 (D.N.M. Aug. 17, 2016); Sharon K. Sandeen, *The DTSA: The Litigator's Full-Employment Act*, 72 WASH. & LEE L. REV. ONLINE 308, 314–15 (2015). Indeed, Congress expressly confirmed this in enacting the DTSA:

> The new S 1836(b) in paragraph (1) authorizes the owner of a trade secret that is misappropriated to bring a civil action in Federal court if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. This *jurisdictional* nexus to interstate or foreign commerce is identical to the existing language required for Federal jurisdiction over the criminal theft of a trade secret under S 1832(a).

H.R. Rep. No. 114-529, at 9 (2016) (emphasis added).

GEICO's complaint does not allege any nexus between interstate or foreign commerce and the alleged trade secrets contained within the Antonacci affidavit. This deficiency, in itself, warrants dismissal of plaintiffs' DTSA claim. Hydrogen Master Rights, Ltd. v. Weston, --- F. Supp. 3d ----, 2017 WL 78582, at *10 (D. Del. 2017).[20] In Hydrogen Master Rights, Ltd. v. Weston, the district court similarly dismissed a DTSA claim because the complaint failed to allege any nexus between interstate or foreign commerce and the alleged trade secrets. 2017 WL 78582, at *10. Because it is possible that GEICO may be able to plausibly allege a nexus between its alleged trade secrets and interstate or foreign commerce, I will dismiss the DTSA claim without prejudice.

### D. Unjust Enrichment

Attorney Nealey argues that GEICO's unjust enrichment claim should be dismissed for failure to state a claim. I agree.

To make out a claim for unjust enrichment, the plaintiff must sufficiently allege the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendants of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit. Com. ex rel. Pappert v. TAP Pharm. Prods., Inc., 885 A.2d 1127, 1137 (Pa. Commw. Ct. 2005). In other words, "to sustain a claim of unjust enrichment, a claimant must show that the party against whom

---

[20] I note that I have raised the issue of subject-matter jurisdiction *sua sponte*. However, because § 1836's "interstate or foreign commerce" requirement is jurisdictional, my inquiry is proper—indeed necessary. Arbaugh, 546 U.S. at 514.

recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. Ct. 1985). To recover for unjust enrichment, there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied. Reese v. Pook & Pook, LLC, 158 F. Supp. 3d 271, 301 (E.D. Pa. 2016).

GEICO's claim boils down to this: attorneys Nealey and Hansen should not be allowed "to retain *any* economic benefit they receive from the *Turk* lawsuit" in which Nealey disclosed the Antonacci affidavit to Dr. Siskin. (Compl. ¶ 77) (first emphasis added). This claim fails as a matter of law. Contrary to GEICO's pleadings and arguments, "the mere fact that one party benefits from the act of another is not of itself sufficient to justify restitution" for unjust enrichment. Global Ground Support, LLC v. Glazer Enterprises, Inc., 581 F. Supp. 2d 669, 676 (E.D. Pa. 2008) (citing Torchia, 499 A.2d at 582). "There must also be an unconscionable injustice in permitting the benefit to be retained without compensation." Id.

Here, GEICO's complaint fails to allege how it is an "unconscionable injustice" that Nealey and Hansen obtained class certification. GEICO is also unable to demonstrate how, in the future, it would be unjust for attorneys Nealey and Hansen to retain "any" proceeds from the case in which the Antonacci affidavit was used. GEICO's only allegation is conclusory at best. (Compl. ¶ 77). There was no legal basis, duty, mechanism, agreement, or court order that forbade attorney Nealey from using the Antonacci affidavit. GEICO failed to properly file the affidavit under seal, never designated it "confidential" per the Protective Order, relied on its information in a

publicly filed notice of removal, and never required Hansen or Nealey to enter into a private agreement limiting or restricting their use of the affidavit. Thus, any allegation that GEICO is somehow entitled to the fruits of Nealey and Hansen's labor in the <u>Turk</u> lawsuit is meritless.

For all these reasons, I will grant the motion to dismiss GEICO's unjust enrichment claim.

### E.     *Abusive Litigation, Harassment, and Improper Purpose*

As I noted at the outset and as explained fully below, at its core, this is a case about litigation abuse, obstructionism, and harassment. I will now consider whether sanctions should be imposed against GEICO and, if so, what type of sanctions are appropriate.[21]

Rule 11's "primary purpose is deterrence of abuses of the legal system." <u>Doering v. Union Cty. Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir. 1988). The standard for imposing sanctions under Rule 11 is an objective one, which asks "whether a reasonable attorney would have acted in a particular way." <u>Fort Washington Resources, Inc. v. Tannen</u>, 858 F. Supp. 455, 463 (E.D. Pa. 1994). This reasonableness is determined under the particular circumstances of the case at bar. <u>Fellheimer, Eichen & Braverman, P.C. v. Charter Tech, Inc.</u>, 57 F.3d 1215, 1225 (3d Cir. 1995). Rule 11 sanctions are only

---

[21] The defendants seek sanctions under Federal Rule of Civil Procedure 11. On May 5, 2017, I ordered GEICO to file a brief to show cause why this case should not be dismissed because it was filed for the improper purpose of harassing, delaying, or needlessly increasing the costs of the ongoing Washington litigation between GEICO and attorneys Nealey and Hansen. <u>See</u> Rule 11 Order to Show Cause, <u>GEICO v. Nealey</u>, No. 17-807 (E.D. Pa. May 5, 2017) (Doc. No. 41). GEICO filed a brief, the attorney-defendants responded, and GEICO filed a reply brief.

proper in "the exceptional circumstance where a claim or motion is patently

unmeritorious or frivolous." Ario v. Underwriting Members of Syndicate 53 at Lloyd's

for 1998 Year Acct., 618 F.3d 277, 297 (3d Cir. 2010).

Separate and apart from Rule 11, federal courts possess inherent authority to

sanction a party or attorney who has acted in "bad faith, vexatiously, wantonly, or for

oppressive reasons." Quiroga v. Hasbro, Inc., 934 F.2d 497, 504–05 (3d Cir. 1991), cert.

denied, 502 U.S. 940 (1991). This inherent authority includes "the ability to fashion an

appropriate sanction for conduct which abuses the judicial process." Goodyear Tire &

Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017). Dismissal of a lawsuit, while

severe, is well within a court's discretion as a sanction to impose pursuant to a court's

inherent authority. Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991); Roadway

Exp., Inc. v. Piper, 447 U.S. 752, 765 (1980) (recognizing the "well-acknowledged

inherent power of a court to levy sanctions," including dismissal, "in response to abusive

litigation practices"). Where there is a "pattern of wrongdoing" or a "wrongdoing that

actually prejudices the wrongdoer's opponent," the need for stronger and more severe

inherent sanctions.  Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74

(3d Cir. 1994).

In this case, while a close call, I cannot conclude that Rule 11 sanctions are proper

because I do not find GEICO's claims "patently unmeritorious or frivolous." Aria, 618

F.3d at 297. The claims are weak, to be sure, but they do possess a modicum of

substance, thereby elevating them slightly above the level of "patently unmeritorious or

frivolous." Id. Consequently, Rule 11 sanctions cannot be imposed.

However, I will impose sanctions, pursuant to my inherent power, for "conduct which abuses the judicial process." Goodyear Tire, 137 S. Ct. at 1186. GEICO's conduct, in filing this lawsuit, was done in bad faith, vexatiously, and for oppressive reasons. Quiroga, 934 F.2d at 504–05. This is the exact type of case where a response to "abusive litigation practices" is warranted. Piper, 447 U.S. at 765.

GEICO has engaged in a pattern of litigation abuse aimed at dodging, delaying, and obstructing its opposing counsel in the Washington class actions. GEICO's conduct began long before this case started. In 2015, GEICO attempted to remove the McGraw case from Washington state court to federal court. The Washington federal court granted attorney Hansen's motion to remand. Yet a mere month later, with a deadline looming in state court, GEICO *again* attempted to remove the McGraw action. The Washington federal court again granted the motion to remand and nearly awarded attorney's fees based on "GEICO's improper removal." McGraw, 2017 WL 744594, at *4.[22] As explained by the U.S. Supreme Court, removal can sometimes be misused "as a method for delaying litigation and imposing costs on the plaintiff." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). GEICO certainly towed the line in this case, as Judge Settle found its second removal "improper" but not worthy of a fine.

GEICO's vexatious litigation tactics did not end after the second McGraw remand, though. In Stone, the Washington federal court initially granted the plaintiffs' (also

---

[22] The court also found GEICO's second attempted removal had "delayed the proceedings, increased [plaintiff]'s costs of litigation, and wasted judicial resources," but GEICO's "one" reasonable argument saved it from attorney's fees sanctions. McGraw, 2017 WL 744594, at *4.

represented by Nealey and Hansen) motion to remand. The court later reconsidered this decision and allowed the case to remain in federal court, subject to attorney Nealey and Hansen's ability to demonstrate that GEICO's proposed class size and fees are unreasonable. Stone v. Government Employees Ins. Co., Case No. C16–5383, 2016 WL 5929228, at *5 (W.D. Wash. Oct. 12, 2016 (citing Martin, 546 U.S. at 141).

Notably, in arguing to keep the Stone case in federal court, GEICO relied heavily on Antonacci's deposition testimony. Id. at *1–5. Antonacci's deposition testimony, which has been available in black-in-white in the above opinion for nearly one year now, discussed *the exact topics and information GEICO now claims is a confidential trade secret*. See id. at *1, 3, 4–6 (heavily citing and quoting Antonacci's deposition testimony regarding GEICO claims data, claims values, "GEICO's computer system," the precise ability of GEICO's computer system to track and determine certain losses, and the ways in which GEICO tracks certain data).

Given that the alleged "trade secrets" in this case have been publicly available in a written judicial opinion for months is further evidence of GEICO's unreasonableness, obstructionism, and abuse. GEICO put the Antonacci information directly in issue when it, through removal, attempted to gain access to what it believed to be a more favorable forum: federal court. The claims data, numbers, values, and information regarding GEICO's claims-data tracking system were laid out for all to see in Judge Settle's well-reasoned opinion. Id. In light of all this, GEICO's subsequent decision to sue the plaintiffs' lawyers and their expert witness for using this same publicly-available information is offensive to the integrity of this Court and the entire judicial process.

It is evident that GEICO has acted in bad faith. Judge Settle gave GEICO a second chance, so to speak, by not imposing sanctions in <u>McGraw</u> for an improper removal. Unfortunately, GEICO's litigation abuses continue. Yet this time, instead of removal, GEICO has upped its ante by suing the very lawyers who represent thousands of plaintiffs in class actions across the country. These tactics have undoubtedly wasted this Court's judicial resources. Much more importantly, however, GEICO's dilatory tactics have forced the defendant-lawyers in this case to refocus their efforts from representing thousands of class members to defending themselves in a faraway forum. This has undoubtedly had a negative impact on the defendant-lawyers' ability to adequately represent the <u>Stone</u> plaintiffs and GEICO surely knew this when they decided to sue in Philadelphia. The thousands of class members Hansen and Nealey represent, who await resolution of their claims, should not suffer as a result of GEICO's egregious conduct.

Based on all the foregoing, I will impose the sanction of dismissal pursuant to my inherent authority to remedy judicial abuses. <u>Cf.</u> <u>Del Giudice v. Capital Mgmt., LLC</u>, Civ. A. No. 06–1413, 2009 WL 424368, at *11–12 (D.N.J. Feb. 19, 2009) (imposing dismissal as a sanction, under Rule 11, when a company sued the lawyers who had previously sued the company in "a choreographed strategy by [the company] and its attorneys designed to constitute a counterattack against" the case that had been filed against the company).[23] I have considered alternative sanctions, but none other would

---

[23] Just like in <u>Del Giudice</u>, the claims asserted here are merely evidence of a larger "choreographed strategy" by GEICO and its attorneys "designed to constitute a counterattack against" the Washington class actions filed by Nealey and Hansen against GEICO. 2009 WL 4243368, at *11.

remedy the harm here. The harm here to defendants is the burden of having to defend against the lawsuit itself, in a faraway forum, with deadlines and obligations to meet in its pending Washington litigation. No sanction other than dismissal could cure this harm. I also find the severe sanction of dismissal proper here given GEICO's "pattern of wrongdoing" and "wrongdoing that actually prejudices" attorneys Nealey and Hansen. Republic of Philippines, 43 F.3d at 74. However, I will dismiss the case without prejudice to afford GEICO the opportunity to amend its complaint.[24]

Although I have considered the merits of GEICO's claims, courts may impose dismissal as a sanction, when there is sufficient misconduct, regardless of the merits of the plaintiff's claims. For example, in Del Giudice v. S.A.C. Capital Management, LLC, a pharmaceutical company was sued for securities fraud by some its stockholders. 2009 WL 424368, at *1–2. Like in this case, a protective order was entered by the court presiding over this securities action. Del Giudice, 2009 WL 424368, at *2. Also like in this case, a dispute arose regarding the use of documents pursuant to the protective order. Id. In response to this dispute, lawyers who had worked in conjunction with the pharmaceutical company sued the plaintiffs and their attorneys. Id. at *1–3. Yet it became clear, through the proceedings, that the lawsuit was filed for an improper purpose:

---

[24] Simply because I found Rule 11 sanctions unwarranted does not preclude me from sanctioning the parties pursuant to my inherent authority. See Chambers, 501 U.S. at 46 (explaining that a court's inherent authority to impose sanctions for bad-faith conduct is not displaced by any statute or rule such as Rule 11); Barash v. Kates, 585 F. Supp. 2d 1347, 1363–68 (S.D. Fla. 2006) (imposing inherent authority sanctions for bad-faith conduct after finding Rule 11 sanctions inapplicable); see id. at 1364 ("[W]hether or not [a party] can be sanctioned pursuant to the Court's inherent authority is a separate, albeit related, matter.").

> The record before the Court suggests that these proceedings . . . were all part of a choreographed strategy by [the pharmaceutical company] and its attorneys designed to constitute a counterattack against the . . . securities action [that was filed against it]. The record demonstrates that highly experienced professionals, i.e., the attorneys who filed and pursued the Del Giudice action and the RICO action, were ready and willing tools of [the pharmaceutical company].

Id. at *11.

Based on this "abuse of our judicial system," the court imposed the sanction of dismissal.[25] Id. The court did this without even considering the merits of the underlying action. Id. In doing so, the court acknowledged "that it is a rare situation in which a case is dismissed as a Rule 11 sanction without an evaluation of the substantive merits of the claims." Id. at *12. "Here, however," the court continued, "the conduct is so egregious, and the futility of imposing alternate sanctions is so clear, that dismissal is the only appropriate sanction." Id. I find GEICO's conduct extremely similar to that of the sanctioned parties in Del Giudice. Just like the sanctioned parties there, GEICO has clearly used this lawsuit as a "counterattack" against the lawyers who represent the individuals in the class actions against filed against GEICO in Washington. I am certainly mindful of the competitive nature of litigation. Yet suing opposing counsel is not the way

---

[25] Although Del Giudice imposed sanctions pursuant to Rule 11, that does not change the fact that this case shares with Del Giudice the common thread of abusive litigation, bad faith, and the use of lawsuits as vengeful tactics, by defendants, to counterattack actions filed against them.

to handle discovery disputes. Indeed, it is immature and offends the sacred notions of civility and professionalism demanded by the bar and this court.[26]

In arguing against sanctions, GEICO misstates the Supreme Court's recent decision in Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178 (2017). In Goodyear, the Supreme Court considered "a federal court's inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees." 137 S. Ct. at 1183–84. The entire Goodyear decision dealt with the specific sanction of attorney's fees—not dismissal or any other type of sanction. See Goodyear, 137 S. Ct. at 1183–84, 1186, (explaining that the issue the Court was addressing dealt solely with the proportionality of an *attorney's fee* as a specific type of sanction). Despite Goodyear's limited import, GEICO misquotes the case in an attempt to avoid dismissal as a sanction: "In other words, the [sanction] may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." (GEICO's Brief to Show Cause Why the Sanction of Dismissal Should Not Be Imposed, Doc. No. 47, at 47) (quoting Goodyear, 137 S. Ct. at 1186) (alteration in GEICO's brief)). The actual quotation reads quite different: "In other words, the ***fee award*** may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." Goodyear, 137 S. Ct. at 1186 (emphasis added). Simply put, GEICO substitutes the specific sanction at issue—"fee award"—with the word

---

[26] Based on GEICO's dilatory tactics and abuse of the judicial process, I was not required—though I did—to consider the merits of GEICO's claims in imposing dismissal as a sanction. Del Giudice, 2009 WL 424368, at *12.

"sanction." Yet <u>Goodyear</u> had nothing to do with "sanctions" generally and everything to do with the specific sanction of attorney's fees.

For all the above reasons, I will dismiss GEICO's entire complaint without prejudice pursuant to my inherent authority to sanction litigation abuse.[27]

## V.    CONCLUSION

This is not a trade secrets case. This is a case about a company that improperly responded to a class action filed against it by suing the lawyers who filed the class action in faraway forum. This strategic counterattack to the Washington class actions is a clear abuse of the judicial process.

Rather than confer with Nealey and Hansen in Washington regarding their use of documents obtained in discovery in <u>Stone</u>, GEICO sued them in Philadelphia. GEICO did this under the guise of a "trade secrets" claim despite the fact that: (1) the alleged "trade secrets" have been publicly available in a judicial opinion for nearly a year, (2) GEICO did not designate the alleged "trade secrets" as confidential under the Protective Order, (3) GEICO relied on much of these "trade secrets" in a publicly filed notice of removal, (4) GEICO did not properly follow the Local Rules for filing the alleged "trade secrets" under seal, and (5) GEICO never entered into any sort of private agreement with Hansen and Nealey to restrict or limit their use of the affidavit.

For all the reasons stated throughout this opinion, I will dismiss GEICO's complaint, in its entirety, without prejudice. Whether GEICO will again be subject to

---

[27] My dismissal pursuant to my inherent authority stands on its own as a separate and distinct basis for dismissal of GEICO's complaint. As discussed earlier in the opinion, there are other independent bases for dismissal as well.

sanctions under my inherent authority (or under Rule 11) will depend upon the renewed strength and plausibility of GEICO's claims in its amended complaint, should it decide to take this route and file one.